UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        Plaintiff,<br>    v.<br>HONEYWELL INTERNATIONAL INC.,<br>        Defendant. | Case No. 08-961 (RWR/JMF) |

## MEMORANDUM OPINION

Currently pending and ready for resolution is <u>Defendant Honeywell International Inc.'s Motion for Sanctions and Motion to Compel Against the United States of America</u> [#46].[1] For the reasons stated below, the motion will be denied without prejudice, pending the conclusion of discovery. At that point, the motion may be renewed, with the parties being given adequate time to resubmit their papers. In the interim, I recommend to Judge Roberts that, if he sees fit, he permit me to provide intensive weekly supervision of the discovery process so that it concludes by the new date set by the presiding judge.

### BACKGROUND

On June 5, 2008, the United States brought this action against Honeywell International Inc. ("Honeywell") pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33.[2]

---

[1] An unredacted version of defendant's motion was originally made on July 20, 2011. See <u>Defendant Honeywell International Inc.'s Motion for Sanctions and Motion to Compel Against the United States of America</u> [#38]. All citations in this opinion are to the redacted version.

[2] All references to the United States Code or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

According to the United States, Honeywell "submitted false claims for payment and false statements in connection with the sale of defective body armor, primarily ballistic 'bullet-proof' vests, to the United States and to state, local, and tribal law enforcement agencies funded in part by federal funds." Complaint of the United States of America [#1] ¶ 1.  The United States further alleges that the defective vests manufactured by Honeywell contained a patented product known as Zylon Shield or Z Shield, which Honeywell sold to Armor Holdings, Inc. and its subsidiaries, who in turn used it in the manufacture of bullet-proof vests that were ultimately sold to the various law enforcement agencies. Id.  These vests, the United States alleges, were defective because the "Z Shield degraded quickly over time in hot and humid environmental conditions," thereby affecting the vests' ballistic performance and fitness for use as body armor. Id. ¶ 41.

Honeywell has now moved for sanctions, complaining that the Department of Justice[3] did the following:

1)   Represented that its production was nearly complete and then a) produced large amounts of data and b) found three previously undisclosed computers belonging to Kirk Rice, said by Honeywell to be "the most important Government witness in this case";[4]

2)   Failed to issue litigation holds to certain key custodians and failed to take forensic images of their hard drives;[5]

3)   Delegated, without any supervision, the responsibility of finding documents to

---

[3] Hereafter "the Department."

[4] [#46-1] at 16-17.

[5] Id. at 21.

        witnesses who failed to use absolutely crucial terms such as "Z Shield"–the product at issue–or "Honeywell";[6]

4)       Produced sets of documents that were clearly not responsive to the discovery demands but instead contained "inappropriate jokes, chat-room discussions filled with vulgarity, lunch menus, retirement parties, office blood drives and so forth";[7]

5)       Represented that its discovery practices were adequate even though Honeywell directed the Department's attention to its shortcomings;[8] and

6)       Sponsored testimony that was proven inaccurate by the subsequent disclosure of documents.[9]

Finally, Honeywell insists that it has been severely prejudiced by the Department's failings. [#46-1] at 42.

For its part, the Department defends its production of great amounts of data and documents on the grounds that it imposed careful, definitive litigation holds and comprehensive instructions to the key custodians on what to keep and how to search for it. <u>United States' Memorandum in Opposition to Honeywell International Inc.'s Motion for Sanctions and Motion to Compel and In Support of the Government's Motion to Strike</u> [#55] at 12-24.  While it concedes that there have been delays in the discovery and production of relevant documents, it claims to have cured any deficiencies as soon as it became aware of them.  It denies that it ever

---

[6] <u>Id.</u> at 25-27.

[7] <u>Id.</u> at 30.

[8] <u>Id.</u> at 32.

[9] <u>Id.</u> at 35-38.

tried to prevent the disclosure of any information that contradicts its contentions that Honeywell: 1) knew that its product would not work as advertised in conditions of high heat and humidity, and 2) resisted cooperating with the government in finding out that this was true. Id. at 38. Finally, the Department dismisses as trivial the information to which Honeywell points as exculpatory and contradictory of the Department's position. Id. at 38-60. Rather, the Department insists that Honeywell cannot possibly establish that it was prejudiced by the deficiencies about which it complains. Id. at 52-53.

## DISCUSSION

By minute order issued on February 29, 2012, Judge Roberts extended the discovery deadline to October 22, 2012. In the Department's opposition to the motion for sanctions, which was filed on September 27, 2011, it indicated that additional productions, including analyses of data depositories, will be made. [#55] at 30. Additionally, the Department has committed itself to paying the expenses for the depositions of certain witnesses who have been deposed but now will be deposed again because of the disclosure of documents after their depositions have been taken. Id. at 9. In light of these developments, and having reviewed the record in this case and the parties' excellent submissions, I am convinced that any consideration of sanctions is, at this point, premature.

First, there is not, nor can there be, any claim of a violation of a specific discovery order that would invoke the penalties authorized by Rule 37(b)(2) of the Federal Rules of Civil Procedure. That would include one of the remedies Honeywell seeks–precluding the government from proving that Honeywell failed to provide test data or cooperate with a government investigation into the product it sold. Indeed, even if there were such a violation, such a drastic

4

remedy would invoke the requirements imposed by Bonds v. District of Columbia, 93 F.3d 801 (D.C. Cir. 1996). In that case, the lower court precluded the defendant from calling any witnesses. The court of appeals concluded that such a drastic remedy could be imposed only after the lower court had considered whether a lesser alternative would be futile to cure the prejudice to the opposing party or the judicial system and the need to deter similar misconduct in the future. Id. at 808. Here, there has been no prejudice to the judicial system. No trial date has been reset and Judge Roberts has now extended the deadline for discovery.

Second, as to the merits of the controversy, whether there has been any prejudice to Honeywell that cannot be cured, or at least lessened by the discovery that it yet to be done, cannot possibly be ascertained now.

Finally, if the preclusion sanction seeks only to deter future discovery misconduct, it must be based on a "finding of flagrant or egregious misconduct" by the offending party. Id. at 809. Notable, the preclusion remedy sought here–prohibiting the government from making a contention–is more drastic than the remedy in Bonds. In Bonds, the defendant could not call witnesses but could at least offer exhibits and cross-examine the witnesses the other party called, retaining at least the remnants of its defense. Here, the government would lose entirely a claim that may be central to its case. Considering whether to give such sanctions before discovery ends would be unusual in any case. It is particularly foolhardy to do so in one involving the deadly serious allegation by the Department that Honeywell knowingly sold a product that was incapable of stopping a bullet aimed at a police officer's heart, if the weather was either too warm or too humid. Fairness to both parties in such a case requires that any resolution other than on the merits be placed on the most solid evidentiary basis possible. In re Fort Totten, ___ F.R.D.

___, 2011 WL 6355547, at *5 (D.D.C. 2011).  In this case, it cannot be determined whether the Department has engaged in this kind of misconduct until the court examines its entire behavior during discovery at the conclusion of the discovery process in October.

Admittedly, proof of a specific rule violation may not be necessary to invoke the inherent power of the court to impose a sanction.  The court's inherent authority to sanction misconduct is not displaced by the existence of rules or statutes that might otherwise be applicable.  Furthermore, conduct that is not touched by a rule or statute may still be sanctionable under that inherent authority.

In Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991), the Supreme Court explained the interplay of these two sources of authority.  First, "where there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court should ordinarily rely on the Rules rather than the inherent power." Id.  But, if the pertinent rule (or statute) is not "up to the task, the court may safely rely on its inherent power." Id.

On the other hand, even if a rule or statute may apply, the court does not abuse its discretion by resorting to its inherent authority where, for example, some of a litigant's bad-faith misconduct may be reached by the rules, but much of her misconduct may be beyond the reach of the rules. Id.  Such a situation may confront the court with conduct "sanctionable under the Rules [that] was intertwined within conduct that only the inherent power could address." Id. at 51.  In such a situation, where "all of a litigant's conduct is deemed sanctionable," a court need not apply the pertinent rules or statutes "containing sanctioning provisions to discrete occurrences" before asserting its inherent authority to sanction the litigant's entire course of conduct. Id.

The court of appeals for this Circuit has made the requirements for the assertion of this

inherent authority clear.  In Ali v. Tolbert, 636 F.3d 622, 627 (D.C. Cir. 2011), the court stated:

> Notwithstanding Noble's conduct is not sanctionable under Rule 11, sanctions may nonetheless be warranted under the district court's inherent authority, which "enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments." Shepherd v. Am. Broad. Cos., 62 F.3d 1469, 1472 (D.C.Cir. 1995); see generally Chambers, 501 U.S. at 43–46, 111 S.Ct. 2123 (describing extent of inherent judicial authority).  Accordingly, we remand for the district court to consider whether to exercise its inherent authority to sanction Noble.  To support a sanction under this authority, the court must make a finding by clear and convincing evidence that Noble committed sanctionable misconduct that is tantamount to bad faith. Shepherd, 62 F.3d at 1472 (clear and convincing evidence); Roadway Exp., Inc. v. Piper, 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (bad faith).

Id. at 627.

  Thus, before the court may assert its inherent authority, it must first determine whether the Department's alleged misbehavior is sanctionable under a rule or statute that was equal to the task.  If it is, reliance on that rule or statute suffices.  If, on the other hand, a rule or statute is not applicable, the court may assert its inherent authority only when misconduct "tantamount to bad faith" is shown.

  Finally, punishing discrete acts of misbehavior under pertinent rules or statutes may be unnecessary and inefficient, however, when the litigant's entire course of conduct is worthy of sanction.  Clearly, this Court cannot comply with any these demanding requirements until it can judge all of the Department's behavior during discovery when that process has concluded.

  Honeywell also requests that the Court now draw an adverse inference against the Department because of its failings.  This sanction falls within the category of what the court of

appeals has called issue-related (as opposed to penal) sanctions. D'Onofrio v. SFX Sports Group, Inc., No. 06-CIV-687, 2010 WL 3324964, at *5 (citing Shepherd v. Am. Broad. Cos., Inc., 62 F.3d 1469, 1478 (D.C. Cir. 1995)).  Giving such an adverse instruction requires a party to establish by a preponderance of evidence that its opponent's "misconduct has tainted the evidentiary resolution of the issue." Shepherd, 62 F.3d at 1478.  Again, determining whether such a sanction and the consequences it may have for the evidence that parties will ultimately present, including a claim that some evidence has been lost, must be based on 1) the government's behavior during the entire discovery process, which is now months from being completed, and 2) all of the potential evidence the discovery process will ultimately produce.

I appreciate that Honeywell seeks other sanctions, including 1) an order to compel the Department to preserve and search for documents in accordance with the Federal Rules of Civil Procedure and to determine which documents were lost due to the failure to preserve them, and 2) monetary sanctions for fees incurred for the Department's alleged discovery misconduct. [#46-1] at 45.

First, Rule 26(g) of the Federal Rules of Civil Procedure already imposes on the Department the obligation to make a complete and correct disclosure.  See Mancia v. Mayflower Textile Servs. Co., 253 F.R.D. 354, 357 (D.Md. 2008).  I see no reason to order the Department to do what it is already obliged to do.  Nor do I see how I could fashion a comprehensible and enforceable order directing the Department to find what it supposedly has lost due to its mismanagement of discovery.  Finally, the assessment of costs and fees must await the end of discovery so that the Department's discovery efforts can be considered and judged in their entirety.

With that said, I have seen enough of the record in this case to convince me that the parties and the Court would benefit from a more active supervision of the remaining discovery. I am also painfully aware of how discovery in False Claims Act cases can easily get out of hand.[10] To that end, I will recommend to Judge Roberts that he consider directing me to preside over the remaining discovery in this case. If that were to occur, I would begin by ordering the parties to meet and confer and submit a joint plan regarding at least the following issues:

1. Are there any additional depositories of electronically stored information or of papers documents that have yet to be produced by either party and, if so, what is the schedule for their production?

2. What is the schedule for the remaining depositions?

3. Are there any outstanding claims of privilege that the parties have not resolved? If so, how do the parties intend to present them for judicial resolution?

4. Are there any other concerns that might delay the completion of discovery?

## CONCLUSION

Honeywell's motion for sanctions is premature and will therefore be denied. An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

---

[10] In 2007, I presided over discovery disputes in a case that was filed in 1995. See Miller v. Holzmann, No. 95-CIV-1231, 2007 WL 172327 (D.D.C. Jan. 17, 2007).