UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
                                  )
UNITED STATES OF AMERICA,         )
                                  )
          Plaintiff,              )
                                  )
     v.                           )          Civil Action No. 08-0961 (PLF)
                                  )
HONEYWELL INTERNATIONAL, INC.,    )
                                  )
          Defendant.              )
_____ )

MEMORANDUM OPINION AND ORDER

This matter is before the Court on the United States' Motion for Leave to File an

Amended Complaint [Dkt. 136].[1]  Upon consideration of the parties' written submissions, the

relevant case law, and the oral arguments presented by counsel on July 14, 2016, the Court will

grant the motion.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Judge Richard W. Roberts of this Court previously recounted the factual and

procedural history of this case in several written opinions.  See United States v. Honeywell Int'l

Inc., 798 F. Supp. 2d 12 (D.D.C. 2011) ("Honeywell I"); United States v. Honeywell Int'l, Inc.,

_____

[1]       The papers considered in connection with the issues pending include the
Complaint [Dkt. 1]; Joint Rule 16.3 Report [Dkt. 22]; United States' Memorandum of Points and
Authorities in Support of its Motion for Leave to File an Amended Complaint ("Mot.") [Dkt.
136-1]; Transcript of Proceedings Before Judge Robinson on March 13, 2015 [Dkt. 136-5];
Honeywell International Inc.'s Opposition to the United States of America's Motion for Leave to
File an Amended Complaint ("Opp.") [Dkt. 146]; United States' Reply to Honeywell's
Opposition to the United States' Motion for Leave to File an Amended Complaint ("Reply")
[Dkt. 147]; Agreed Upon Motion of the United States of America and Honeywell International
Inc. to Extend the Case Deadlines [Dkt. 157]; and Joint Motion of the Parties Requesting
Additional Time to Complete Expert Discovery [Dkt. 160].

841 F. Supp. 2d 112 (D.D.C. 2012) ("Honeywell II"); United States v. Honeywell Int'l Inc., 281

F.R.D. 27 (D.D.C. 2012) ("Honeywell III"); United States v. Honeywell Int'l, Inc., 20 F. Supp.

3d 129 (D.D.C. 2013) ("Honeywell IV").  As relevant here, the United States filed its initial

complaint on June 5, 2008, and alleged common law unjust enrichment and two theories of

liability under the False Claims Act, 31 U.S.C. § 3729(a)(1), (2) (2000).[2]  Complaint ¶¶ 86-97

[Dkt. 1].  At base, the United States alleges that "Honeywell knew, within the meaning of the

[False Claims Act], that the Z Shield it sold to Armor Holdings for use in bullet proof vests was

defective and degraded more quickly than represented."  Id. ¶ 3.  The complaint characterizes Z

Shield as a product comprised of panels of unwoven Zylon fiber "impregnated in a resin matric"

and "sandwiched in a thermoplastic film."  Id. ¶ 2.

     The parties began discovery in 2008, see Joint Rule 16.3 Report at 2, ¶ D(1)

(September 25, 2008) [Dkt. 22], almost three years before Judge Roberts denied Honeywell's

motion to dismiss in 2011 because the United States had pled plausible False Claims Act and

unjust enrichment claims.  Honeywell I, 798 F. Supp. 2d at 20-25.  Fact discovery continued

until September 1, 2015, see Joint Motion to Extend Discovery at 1 (Mar. 2, 2016) [Dkt. 157],

and expert discovery is currently set to close on January 27, 2017.  See Joint Motion to Extend

Discovery at 2 (July 19, 2016) [Dkt. 160].  At a hearing before Magistrate Judge Deborah A.

Robinson on March 13, 2015, Judge Robinson denied the United States' motion to compel a

---

[2]     Those theories are:  (1) that Honeywell "knowingly . . . cause[d] to be presented,
a false or fraudulent claim for payment or approval" under 31 U.S.C. § 3729(a)(1) (2000); and
(2) that that Honeywell "knowingly . . . cause[d] to be made or used, a false record or statement
material to a false or fraudulent claim" under 31 U.S.C. § 3729(a)(2) (2000).  Complaint ¶¶ 86-
93.  Judge Roberts previously opined that the United States' first theory is an "implied
certification claim."  Honeywell I, 798 F. Supp. 2d 12, 20 (D.D.C. 2011).  The Supreme Court
recently clarified what is required to prove an implied certification claim under the False Claims
Act, see Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989 (2016), but that decision
is not relevant to the instant motion for leave to amend.

physical inspection of a Honeywell research facility where Honeywell designed manufacturing processes for Z Shield because, <u>inter alia</u>, "there is no allegation at all in the Complaint[] concerning the [Z Shield] manufacturing process." <u>See</u> Tr. 3/13/15 at 44 [Dkt. 136-5].

Less than a month after this adverse ruling and prior to the completion of fact discovery, the United States on April 8, 2015 moved to amend its complaint to add three additional "factual allegations" that Honeywell "knew within the meaning of the [False Claims Act], that: (1) the water-based coating process used to apply the resin during Z Shield manufacturing exacerbated Z Shield's degradation problems in heat and humidity; (2) the shield in Z Shield, that purportedly protected the Zylon fibers from outside sources of heat and humidity, was too fragile and provided insufficient protection against these elements; and (3) the Z Shield data in Honeywell's publicly disclosed warehouse testing had been manipulated to make Z Shield's retention of its ballistic performance over time appear much better than in actuality." Mot. at 1.

Honeywell opposes the motion for leave to amend because, in its view, the initial complaint alleged only that "the Zylon fiber used in Z Shield" and no other aspect of the Z Shield "was inherently susceptible to degradation under conditions of high heat and humidity." Opp. at 13. Honeywell argues that the United States' addition of these three new allegations prejudice it because there already have been approximately 50 depositions in the case and the additions would effectively deny Honeywell the opportunity to present facts and evidence, or cause it incredible expense to depose overseas witnesses about the new allegations. <u>Id</u>. at 20-21. Finally, Honeywell contends that the United States acted with a dilatory motive because the United States knew about problems with the "water-based coating process" in 2010 and mentioned the "warehouse testing" in the initial complaint. <u>Id</u>. at 29.

## II.  DISCUSSION

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, when unable to do so as of right, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).  "[I]t is common ground that Rule 15 embodies a generally favorable policy toward amendments."  Hill v. U.S. Dep't of Def., 70 F. Supp. 3d 17, 19 (D.D.C. 2014) (quoting Davis v. Liberty Mut. Ins. Co., 871 F.2d 1134, 1136-37 (D.C. Cir. 1989)); see also Harris v. Sec'y, U.S. Dep't of Veterans Affairs, 126 F.3d 339, 344 (D.C. Cir. 1997) (describing Rule 15(a)(2) as adopting a "generous standard").  In considering whether to grant leave to amend a pleading, a district court should consider factors "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  Foman v. Davis, 371 U.S. 178, 182 (1962).

"Undue prejudice is not mere harm to the non-movant but a denial of the opportunity to present facts or evidence which would have been offered had the amendment been timely."  Does I through III v. District of Columbia, 815 F. Supp. 2d 208, 215 (D.D.C. 2011) (internal quotation marks omitted); see also Barkley v. U.S. Marshals Serv. ex rel. Hylton, 766 F.3d 25, 39 (D.C. Cir. 2014) ("[T]he grant of leave to amend a complaint might often occasion some degree of delay and additional expense, but leave still should be 'freely given' unless prejudice or delay is 'undue[.]'" (quoting Foman v. Davis, 371 U.S. at 182)).  "[A]n amendment is not automatically deemed prejudicial if it causes the non-movant to expend additional resources.  Any amendment will require some expenditure of resources on the part of the non-moving party.  'Inconvenience or additional cost to a defendant is not necessarily undue

4

prejudice.'" <u>United States ex rel. Westrick v. Second Chance Body Armor, Inc.</u>, 301 F.R.D. 5, 9

(D.D.C. 2013) (quoting <u>City of Moundridge v. Exxon Mobil Corp.</u>, 250 F.R.D. 1, 6-7 (D.D.C.

2008)).  Indeed, "if [a] court were to employ a policy of denying plaintiffs leave to amend in

every situation where an amended complaint may result in additional discovery or expense, then

[the] court would fail to abide by the legal standard of granting leave 'freely . . . when justice so

requires.'"  <u>Hisler v. Gallaudet Univ.</u>, 206 F.R.D. 11, 14 (D.D.C. 2002) (quoting FED. R. CIV. P.

15(a)(2)).  In order for a court to determine if the threat of prejudice to the opposing party is

"undue," courts should consider "the hardship to the moving party if leave to amend is denied,

the reasons for the moving party failing to include the material to be added in the original

pleading, and the injustice resulting to the party opposing the motion should it be granted."

CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, 6 FED. PRAC. & PROC. CIVIL

§ 1487 (3d ed. 2012).

 The Court will address each of the United States' proposed amendments in turn.

### A.  Water-Based Coating Process

 With respect to its first proposed amendment relating to the "water-based coating

process," the United States conceded at oral argument that it knew about the factual basis for this

allegation as far back as 2010.  Indeed, the United States' March 1, 2010 interrogatory responses

stated that "the resin used to laminate Z Shield was made using a water-based washing process

that Honeywell knew [] accelerated the degradation process of Z Shield" and "contributed to Z

Shield performing more poorly in ballistics-performance retention tests than ordinary Zylon fiber

and fabric."  <u>See</u> Mot., Ex. 3 at 8 [Dkt. 136-5].  The water-based coating process was also a

common subject during depositions taken by the United States from 2009 onward.  <u>See</u> Reply at

16 (citing deposition transcripts).  The United States' only explanation for the delay is

administrative:  it sought to avoid amending the complaint piecemeal and chose instead to seek to amend once it mustered multiple new allegations.

       The legal question therefore is whether the United States' decision to wait six years to amend its complaint to add allegations related to the water-based coating process constitutes undue delay sufficient to deny leave to amend.  Perhaps in colloquial terms, it did.  But the D.C. Circuit has held that "[t]he district court may not deny" a motion for leave to amend the complaint "based solely on timeliness unless the defendants can [also] show undue prejudice."  In re APA Assessment Fee Litig., 766 F.3d 39, 56–57 (D.C. Cir. 2014); compare Harrison v. Rubin, 174 F.3d 249, 253 (D.C. Cir. 1999).  The Court finds that allowing the United States to amend the complaint to add a new factual allegation about the water-based coating process will not cause Honeywell *undue* prejudice.

       While the United States' initial complaint does not allege manufacturing defects in Z Shield, the new water-based coating process allegation "do[es] no more than clarify [its] legal theor[y]" that "Z Shield . . . was defective and degraded more quickly than represented." Complaint ¶ 3.  Honeywell does not suggest that the United States' delay prejudiced it — let alone *unduly* prejudiced it — because key witnesses are no longer available.  Rather, it argues that the water-based coating process amendment would require reopening fact discovery and taking onerous depositions in the Netherlands and Israel.  While it may be true that Honeywell will decide that it needs such additional fact discovery or that it might like to bolster its expert discovery, whatever burden the water-based coating process amendment occasions on Honeywell is not *undue*.  In addition, the United States' interrogatory responses in 2010 certainly put Honeywell on notice that the United States would be pursuing a water-based coating process allegation, and the extensive discussion of the issue during depositions suggests that any

additional discovery on the matter should not be nearly as burdensome as Honeywell suggests. In sum, the water-based coating process amendment will not cause Honeywell undue prejudice, only the garden-variety prejudice that attends a party sharpening the allegations of the complaint for which it has adduced evidence in discovery.

The Court therefore will grant the United States' motion for leave to amend its complaint to add the water-based coating process allegation.

## B.  Fragile Shield

The Court finds no similar undue delay with respect to the United States' attempt to add an allegation that the shield in Z Shield was fragile.  The initial complaint references the "delamination" of the Z Shield, Complaint ¶ 69, which the Court infers is a reference to a breakdown in the "thermoplastic film" aspect of the Z Shield.  Id. ¶ 2.  The United States probed this topic during at least five depositions in 2009, see Reply at 18 n.20, but "it was not until recently" that the evidence of the fragility of this "film" or "shield" "came to light from the work of the United States' experts," who, with their expertise, reviewed discovery documents.  Mot. at 5.  Honeywell does not rebut this characterization of the relevant timeline.  The Court therefore finds no undue delay with respect to the fragile shield allegation because the United States' experts only recently were able to reach conclusions that provided a strong basis to amend the complaint.

In addition, the Court finds that allowing the United States to amend the complaint to add its fragile shield allegation also will not cause Honeywell *undue* prejudice. Like the water-based coating process allegation, the Court is not persuaded that Honeywell's desire to reopen fact discovery and take depositions in the Netherlands and Israel constitutes undue prejudice.  Whatever burden the fragile shield amendment occasions on Honeywell is

7

even less prejudicial than the water-based coating process amendment discussed above because the United States' initial complaint contains allegations about the fragility of the shield.  See, e.g., Complaint ¶ 69.

No reasonable reader of the United States' initial complaint could conclude, as Honeywell now argues, that it addresses only the Zylon component of Z Shield.  Indeed, Judge Roberts's opinion denying Honeywell's motion to dismiss evidences an understanding that the United States' theory of False Claims Act liability under 31 U.S.C. § 3729(a)(1) alleges that Z Shield — not Zylon in particular — degraded under hot and humid conditions.  See Honeywell I, 798 F. Supp. 2d at 16-17.  That opinion also describes the United States' theory of False Claims Act liability under 31 U.S.C. § 3729(a)(2) as "alleg[ing] that Honeywell cherry-picked the data it disclosed to Armor Holdings and to the public so that it could continue to sell *Z Shields*."  Id. at 24 (emphasis added).  The Court shares Judge Roberts's view and concludes that United States initial complaint put Honeywell on notice that other aspects of Z Shield — such as the "shield" that is the subject of the fragile shield allegation — would be at issue in this case.  Again, any such additional discovery occasioned by the fragile shield amendment is simply the garden-variety prejudice that attends a party sharpening the allegations of the complaint for which it has adduced evidence in discovery, not *undue* prejudice.

The Court therefore will grant the United States' motion for leave to amend its complaint to add the fragile shield allegation.

## C.  Warehouse Testing

Like the fragile shield allegation, the Court finds no undue delay with respect to the United States' attempt to add an allegation that Honeywell manipulated its warehouse data.  The initial complaint identified the warehouse data as more favorable than other Honeywell data

about Z Shield and alleged that Honeywell cherry-picked the positive warehouse data while shielding the less favorable data.  Complaint ¶¶ 61, 63.  The United States always assumed, however, that the cherry-picked data was accurate.  The United States explains that it now seeks to change its theory from "Honeywell cherry-picked the warehouse data" to "Honeywell manipulated the warehouse data" because "it was not until recently" that the evidence of the manipulation "came to light from the work of the United States' experts," specifically their review of discovery documents.  Mot. at 5.  Honeywell does not rebut this characterization of the relevant timeline or the claim that the United States' experts reached their conclusion about manipulation of data only recently after reviewing discovery.  The Court therefore finds no undue delay with respect to the warehouse data manipulation allegation, because the United States' experts only recently reached conclusions that provided a strong basis to amend the complaint.

In addition, the Court finds that allowing the United States to amend its complaint now to add its warehouse data manipulation allegation will not cause Honeywell undue prejudice.  The initial complaint made the warehouse testing data a focal point of the United States' allegations and put Honeywell on notice that it would have to defend the veracity of the warehouse testing data.  As such, the fact that the United States' experts have recently concluded that Honeywell manipulated the warehouse testing data (rather than cherry-picked it) should not require extensive additional discovery on Honeywell's part.  Again, this is not *undue* prejudice.

The Court therefore will grant the United States' motion for leave to amend its complaint to add its allegation relating to the manipulation of warehouse testing data.

III.  CONCLUSION

For the reasons stated herein, the Court will grant the United States' motion for leave to amend the complaint.  If the amendments require changes to the discovery schedule currently in place, the parties shall raise those issues before Magistrate Judge Robinson as is appropriate.

It is hereby

ORDERED that the United States' Motion for Leave to File an Amended Complaint [Dkt. 136] is GRANTED; and it is

FURTHER ORDERED that the Clerk of the Court shall docket the United States' First Amended Complaint [Dkt. 136-5].

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
DATE:  July 29, 2016                                    United States District Judge