UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 08-0961 (PLF) |
| HONEYWELL INTERNATIONAL INC., | ) | |
| Defendant. | ) | |

OPINION

Defendant Honeywell International Inc. ("Honeywell") moves this Court pursuant to 28 U.S.C. § 1292(b) to certify for interlocutory appeal its November 25, 2020 order denying summary judgment. Defendant Honeywell International Inc.'s Motion for Certification Under 28 USC § 1292(b) ("Def. Mot.") [Dkt No. 235]. Plaintiff, the United States, opposes the motion. United States of America's Opposition to Honeywell's Motion for Certification of the Damages Part of the Court's November 25, 2020 Order Pursuant to 28 U.S.C. §1292(b) ("Gov't Opp.") [Dkt. No. 237]. Upon consideration of the parties' written submissions, the relevant case law, and the relevant portions of the record in this case, the Court will grant Honeywell's motion.[1]

---

[1] The documents considered in connection with the pending motion include: Complaint ("Compl.") [Dkt. No. 1]; First Amended Complaint ("Am. Compl.") [Dkt. No. 163]; Defendant Honeywell International Inc.'s Motion for Summary Judgment ("Def. Mot. SJ") [Dkt. No. 204]; Memorandum in Support of Honeywell International Inc.'s Motion for Summary Judgment ("Def. Mem. SJ") [Dkt. No. 204]; The United States of America's Opposition to Honeywell International Inc.'s Motion for Summary Judgment ("Gov't Opp. SJ") [Dkt. No. 209]; Reply in Support of Honeywell International Inc.'s Motion for Summary Judgment

I. FACTUAL AND PROCEDURAL HISTORY

The United States brought this action against Honeywell under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and the federal common law of unjust enrichment. Compl. ¶ 1; Am. Compl. ¶ 1. The United States alleges that Honeywell made false statements and omissions in relation to the sale of defective body armor containing a Honeywell product, Z Shield, which was sold to the United States and to state, local, and tribal law enforcement agencies funded in part by the United States. Compl. ¶ 1; Am. Compl. ¶ 1.

This action has been the subject of four prior opinions: United States v. Honeywell Int'l Inc. ("Honeywell I"), 798 F. Supp. 2d 12 (D.D.C. 2011) (motion to dismiss); United States v. Honeywell Int'l Inc. ("Honeywell II"), 841 F. Supp. 2d 112 (D.D.C. 2012) (motion to strike); United States v. Honeywell Int'l Inc. ("Honeywell III"), 318 F.R.D. 202 (D.D.C. 2016) (motion for leave to amend complaint); United States v. Honeywell Int'l Inc. ("Honeywell IV"), 502 F. Supp. 3d 427 (D.D.C. 2020) (motion for summary judgment). The Court has previously recounted the factual and procedural history of this litigation, most recently in its opinion denying Honeywell's motion for summary judgment. See Honeywell IV, 502 F.

---

("Def. Reply SJ") [Dkt. No. 214]; Plaintiff United States of America's Supplemental Brief Requested By Order of This Court ("Gov't Suppl. Br. SJ") [Dkt. No. 221]; Honeywell International Inc.'s Supplemental Brief ("Def. Suppl. Br. SJ") [Dkt. No. 222]; Plaintiff United States of America's Sur-Reply to Honeywell's Supplemental Brief ("Gov't Surreply SJ") [Dkt. No. 224]; Defendant Honeywell International Inc.'s Motion for Certification Under 28 USC § 1292(b) ("Def. Mot.") [Dkt No. 235]; Memorandum in Support of Honeywell International Inc.'s Motion for Certification Under 28 USC § 1292(b) ("Def. Mem.") [Dkt. No. 235]; United States of America's Opposition to Honeywell's Motion for Certification of the Damages Part of the Court's November 25, 2020 Order Pursuant to 28 U.S.C. §1292(b) ("Gov't Opp.") [Dkt. No. 237]; Reply Memorandum in Support of Honeywell International Inc.'s Motion for Certification Under 28 USC § 1292(b) ("Def. Reply") [Dkt. No. 238]; and April 19, 2021 Joint Status Report ("April 19, 2021 Joint Status Report") [Dkt. No. 242].

Supp. 3d, at 434-47.  The Court therefore will limit its discussion here to the issues presented by Honeywell's motion pursuant to 28 U.S.C. § 1292(b).

On June 7, 2019, after the close of discovery, Honeywell moved for summary judgment, arguing that the United States could not succeed at trial under any theory of FCA liability or unjust enrichment and that there was no genuine dispute as to any material fact.  See Def. Mot. SJ at 1.  As relevant to this present motion, Honeywell argued that it was entitled to a *pro tanto* offset, or "dollar-for-dollar reduction," of its FCA statutory damages liability, based on amounts the United States had received through settlements with other defendants for common damages.  Def. Mem. SJ. at 47.  Honeywell contended that a *pro tanto* offset would entitle it to summary judgment, because the amount the United States had received through such settlements was greater than the amount of Honeywell's alleged FCA statutory damages liability, resulting in "no statutory damages left to be determined at trial."  Id. at 50.  The United States argued in response that the Court should apply the proportionate share methodology for calculating damages offsets, whereby "each defendant must pay its proportionate share of the damages as determined by the fact finder at trial."  Gov't Opp. SJ at 45.  Under the proportionate share approach, summary judgment would be inappropriate because the fact finder would still need to calculate Honeywell's proportionate share of common damages.  See id. at 46.

On November 25, 2020, the Court issued its opinion and order denying Honeywell's motion for summary judgment.  Honeywell IV, 502 F. Supp. 3d 427; Nov. 25, 2020 Order [Dkt. No. 232].  With respect to the measure of damages, the Court determined that the proportionate share approach to calculating damages offsets applies in an FCA case involving multiple alleged joint tortfeasors, and therefore, that a factual question remains as to Honeywell's FCA statutory damages liability.  Honeywell IV, 502 F. Supp. 3d, at 485-86.

On December 18, 2020, Honeywell moved pursuant to 28 U.S.C. § 1292(b) to certify for interlocutory appeal the Court's November 25, 2020 order denying summary judgment on the grounds that the proportionate share approach governs damages offsets. Def. Mot. at 1. On January 6, 2021, the United States filed its memorandum of law opposing interlocutory appeal, and on January 19, 2021, Honeywell filed its reply in support of certification. Gov't Opp.; Def. Reply.

## II. LEGAL STANDARD

Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). This provision represents a departure from the "basic policy of postponing appellate review until after the entry of a final judgment," Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978) (citations omitted), and provides "an avenue for review" of certain nonfinal orders "in appropriate cases," Van Cauwenberghe v. Biard, 486 U.S. 517, 530 (1988).

Pursuant to Section 1292(b), the district court may certify an order for immediate appeal if it makes the following three findings: "(1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion concerning the ruling exists; and (3) an immediate appeal would materially advance [the ultimate termination of] the litigation." Molock v. Whole Foods Mkt. Grp., 317 F. Supp. 3d 1, 4 (D.D.C. 2018) (quoting APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F. Supp. 2d 90, 95 (D.D.C. 2003)). Interlocutory appeal is only appropriate if all three requirements are satisfied. See Swint v. Chambers Country Comm'n, 514 U.S. 35, 46 (1995) ("[Section] 1292(b)[] accord[s] the district courts circumscribed authority to

4

certify for immediate appeal interlocutory orders deemed pivotal and debatable."); Walsh v. Ford Motor Co., 807 F.2d 1000, 1002 n.2 (D.C. Cir. 1986) (stating that the district court must make all three findings described in the statute). "This screening procedure serves the dual purpose of ensuring that [interlocutory] review will be confined to appropriate cases and avoiding time-consuming jurisdictional determinations in the court of appeals." Coopers & Lybrand v. Livesay, 437 U.S. at 461.

### A. Controlling Question of Law

The first requirement of Section 1292(b) is that the order contain "a controlling question of law." "A 'question of law is an abstract legal issue or what might be called one of 'pure' law, matters the court of appeals can decide quickly and cleanly without having to study the record.'" Arias v. DynCorp, 856 F. Supp. 2d 46, 53-54 (D.D.C. 2012) (quoting Elkins v. District of Columbia, 685 F. Supp. 2d 1, 8 n.2 (D.D.C. 2010)). Where "the crux of an issue decided by the Court is fact-dependent," however, certification is inappropriate as this "could only result in the court of appeals improperly wading into the factual pond of an ongoing matter." Keystone Tobacco Co. v. U.S. Tobacco Co., 217 F.R.D. 235, 238-39 (D.D.C. 2003).

The requirement that an issue be "controlling" means that a ruling on that issue "would require reversal if decided incorrectly or [] could materially affect the course of [the] litigation with resulting savings of the court's or the parties' resources." Molock v. Whole Foods Mkt. Grp., 317 F. Supp. 3d at 4 (quoting Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp., 233 F. Supp. 2d 16, 19 (D.D.C. 2002)). "[T]he resolution of an issue need not necessarily terminate an action in order to be controlling, but instead may involve a procedural determination that may significantly impact the action." Air Transp. Ass'n v. U.S. Dep't of Agric., 317 F. Supp. 3d 385, 394 (D.D.C. 2018) (quoting APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F.

5

Supp. 2d at 96). "The impact that the appeal will have on other cases is also a factor supporting a conclusion that the question is controlling." APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F. Supp. 2d at 96.

*B. Substantial Ground for Difference of Opinion*

The second requirement of Section 1292(b), "substantial ground for difference of opinion," is "often established by a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits," and "also exists where a court's challenged decision conflicts with the decisions of several other courts." APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F. Supp. 2d at 97-98; see also Gov't of Guam v. United States, No. 17-cv-2487, 2019 WL 1003606, at *5 (D.D.C. Feb. 28, 2019) (finding substantial ground for difference of opinion where "there is no controlling precedent from the D.C. Circuit" and "the other courts of appeals that have analyzed this issue are *split*"). "A mere claim that the district court's ruling was incorrect does not demonstrate a substantial ground for difference of opinion." Singh v. George Washington Univ., 383 F. Supp. 2d 99, 104 (D.D.C. 2005) (quotation marks omitted).

"It is not necessarily enough, however, that there are conflicting decisions in other circuits." Molock v. Whole Foods Mkt. Grp., 317 F. Supp. 3d at 5. Similarly, "[t]he mere fact that a substantially greater number of judges have resolved the issue one way rather than another does not, of itself, tend to show that there is no ground for difference of opinion." APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F. Supp. 2d at 98 (emphasis added) (quoting In Re Vitamins Antitrust Litig., Misc. No. 99-197, MDL No. 1285, 2000 WL 33142129, at *2 (D.D.C. Nov. 22, 2000)). Rather, in addition to considering prior decisions, a court "must analyze the strength of the arguments in opposition to the challenged ruling." Molock v. Whole Foods Mkt. Grp., 317 F. Supp. 3d at 5 (quoting APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F. Supp. 2d

6

at 98). If "the arguments in favor of each parties' position . . . are not without merit," a court may conclude that "the issue is truly one on which there is a substantial ground for dispute." Nat'l Veterans Legal Servs. Program v. United States, 321 F. Supp. 3d 150, 155 (D.D.C. 2018).

### C. Materially Advance the Ultimate Termination of the Litigation

To satisfy the third requirement of Section 1292(b), that "immediate appeal from the order may materially advance the ultimate termination of the litigation," the moving party must show that "reversal would hasten or at least simplify the litigation in some material way, such as by significantly narrowing the issues, conserving judicial resources, or saving the parties from needless expense." Molock v. Whole Foods Mkt. Grp., 317 F. Supp. 3d at 6. Although the movant need not show that reversal would end the litigation, it must identify an impact on the proceeding that is more than merely speculative. See Molock v. Whole Foods Mkt. Grp., 317 F. Supp. 3d at 6; cf. Keystone Tobacco Co., Inc. v. U.S. Tobacco Co., 217 F.R.D. at 239 ("A possible impact on case strategy . . . is too intangible a repercussion on the progress of a case to justify certification of interlocutory appeal.").

### D. Certification Appropriate as a Discretionary Matter

Even where the district court "confirm[s] that the moving party has satisfied all of the elements of section 1292(b) . . . it must also conclude that certification is appropriate as a discretionary matter." Azima v. RAK Inv. Auth., 325 F. Supp. 3d 30, 35 (D.D.C. 2018). The party seeking certification must overcome the "strong congressional policy against piecemeal reviews" by showing that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment." Citizens for Resp. & Ethics in Wash. v. Am. Action Network, 415 F. Supp. 3d 143, 144-45 (D.D.C. 2019) (quoting Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp., 233 F. Supp. 2d at 20; Coopers & Lybrand v.

7

Livesay, 437 U.S. at 475); see also Tolson v. United States, 732 F.2d 998, 1002 (D.C. Cir. 1984) ("Section 1292(b) 'is meant to be applied in relatively few situations and should not be read as a significant incursion on the traditional federal policy against piecemeal appeals.'" (quoting 10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2658.2, at 80 (2d ed. 1983))).

*E. Court of Appeals Review*

Once a district court certifies a nonfinal order for interlocutory review, "[a] court of appeals may then, in its discretion, determine whether the order warrants prompt review." Van Cauwenberghe v. Biard, 486 U.S. at 530; see also Walsh v. Ford Motor Co., 807 F.2d at 1002 n.2 ("The decision whether to grant an interlocutory appeal from an *order* of a district court under § 1292(b) is within the discretion of the court of appeals."). "[T]he appellate court may address any issue fairly included within the certified order because it is the *order* that is appealable, and not the controlling question identified by the district court." Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 205 (1996) (quotation marks omitted).

## III. DISCUSSION

Honeywell argues that interlocutory appeal is warranted because (1) the method of calculating damages offsets in an FCA case is a question of law that would require reversal if decided incorrectly; (2) there is an acknowledged difference of opinion between judges in this district regarding the method of calculating damages offsets in an FCA case; and (3) a ruling by the D.C. Circuit requiring application of the *pro tanto* methodology would reduce Honeywell's FCA statutory damages to zero, narrowing the areas of dispute for trial and avoiding the need to litigate the relative fault of parties that have already reached settlements with the United States. Def. Mem. at 1-2.

The United States responds that (1) Honeywell fails to establish a controlling question of law because it does not show specific cost or time savings that would result from a D.C. Circuit ruling in its favor; (2) Honeywell does not show substantial ground for difference of opinion because Honeywell fails to address the concerns underlying this Court's prior conclusion that the proportionate share approach should apply; and (3) interlocutory appeal would not materially advance the ultimate termination of the litigation because, even if the *pro tanto* approach applies and Honeywell's FCA statutory damages reduce to zero, the same causes of action would remain and the same issues of relative fault would be disputed at trial. Gov't Opp. at 2, 9-19. The United States emphasizes that in any event, it would still be entitled to FCA penalties, and its federal common law unjust enrichment cause of action against Honeywell would be unaffected by reversal on the method of calculating damages offsets. Id. at 1, 10-11.

### A. The Order Concerns a Controlling Question of Law

#### 1. Honeywell Has Identified a Question of Law

The Court agrees that the issue on which Honeywell seeks interlocutory appeal involves a question of law. The appropriate method for calculating damages offsets is the quintessential "abstract legal issue" that "the court of appeals can decide quickly and cleanly without having to study the record." Arias v. DynCorp, 856 F. Supp. 2d at 53-54. This is clear from the fact that in concluding that the proportionate share methodology applies, the Court analyzed existing case law concerning the measure of damages offsets and considered, in the abstract, which approach is most likely to promote settlement and serve the interests of judicial economy, equity, and practicality. See Honeywell IV, 502 F. Supp. 3d at 480-86. In contrast to other sections of the Court's opinion denying summary judgment, this section included almost no discussion of the facts of this case. See id. The Court's conclusions were not grounded in how

either method would likely play out in this particular case. See id.; cf. Keystone Tobacco Co., Inc. v. U.S. Tobacco Co., 217 F.R.D. at 238-39 ("Where the crux of an issue decided by the Court is fact-dependent, the Court has not decided 'a controlling question of law' justifying immediate appeal"). Honeywell does not seek to appeal the Court's rulings regarding the existence of any issue of material fact to be determined at trial; it instead seeks review of the Court's conclusion that the proportionate share methodology will govern its financial obligation in this case. See Def. Mem. at 1-2. Honeywell has identified a question of law.

### 2. The Question is Controlling

The measure of damages offsets is controlling because the Court's ruling requiring application of the proportionate share methodology plainly "would require reversal if decided incorrectly." In Re Vitamins Antitrust Litig., 2000 WL 33142129, at *1. In addition, if the D.C. Circuit determines that the *pro tanto* methodology applies, this would also undercut the Court's conclusion that summary judgment was not warranted on the issue of damages, because this conclusion depended on the fact that "proportionate fault has not been adjudicated, [and] a question of fact remains." Honeywell IV, 502 F. Supp. 3d at 485-86. Under the *pro tanto* approach, it would not be necessary to adjudicate Honeywell's proportionate fault. See id. Because this Court found that under the *pro tanto* approach "the damages amount for which Honeywell may be responsible, after offsets, reduces to zero ($0)," reversal on appeal could eliminate the need to adjudicate further factual questions concerning Honeywell's FCA statutory damages liability. Id. at 480.

Other judges within this district have also treated issues pertaining to the measure of damages as "controlling" for purposes of Section 1292(b) certification. See Nat'l Veterans Legal Servs. Program v. United States, 321 F. Supp. 3d at 153-54 (stating that a ruling that

determined whether and in what amount a party faced financial liability "would require reversal" if incorrect); In re Korean Air Lines Disaster of Sept. 1, 1983, 935 F. Supp. 10, 16 (D.D.C. 1996), aff'd, 117 F.3d 1477 (D.C. Cir. 1997) (authorizing interlocutory appeal on plaintiffs' right to recover damages for mental anguish and grief pursuant to 28 U.S.C. § 764 under Korean law). In addition, as Honeywell points out, the D.C. Circuit has accepted interlocutory appeals on the availability of disgorgement as a remedy, providing further support for the proposition that questions of law concerning available damages are "controlling" within the meaning of Section 1292(b). See Lewis v. Pension Benefit Guar. Corp., 912 F.3d 605, 609 (D.C. Cir. 2018) (accepting interlocutory appeal pursuant to Section 1292(b) on the availability of disgorgement); United States v. Philip Morris USA, Inc., 396 F.3d 1190, 1197 (D.C. Cir. 2005) (same)).[2]

The United States responds primarily by asserting that Honeywell has not identified "any cost or time savings from witnesses it would not call or documents it would not use at trial, if the D.C. Circuit ruled in its favor," Gov't Opp. at 17, but no such showing is required under the first prong of Section 1292(b). Nor is it credible to suggest that "the litigation would be conducted in the same way" using the proportionate share method as it would be using the *pro tanto* method. See id. (quoting 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER &

---

[2] Honeywell also cites to Castellanos-Contreras v. Decatur Hotels, LLC, 622 F.3d 393 (5th Cir. 2010). The Court does not find this case instructive. The question certified for interlocutory appeal in Castellanos-Contreras was whether federal law required employers to reimburse workers for certain expenses. Id. at 397. If federal law required such reimbursements, employers who failed to provide reimbursements would have violated the Fair Labor Standards Act by effectively reducing wages below minimum wage. Id. The Fifth Circuit did rule that "whether such expenses are, as a category, reimbursable is a legal question that can properly be the subject of interlocutory review" pursuant to Section 1292(b). Id. at 399. This determination did not, however, relate to the measure of damages and is not analogous to the issue on which Honeywell seeks interlocutory appeal.

EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3930 (3d ed. 2020)). As discussed further in Section III(C), infra, if the *pro tanto* method governs and Honeywell's statutory damages reduce to zero, the jury would be left to adjudicate the United States' unjust enrichment claim and to determine the number of FCA violations for which penalties may be awarded. See Gov't Opp. at 1, 10; Def. Reply at 8. If the jury determines that FCA violations did occur, the Court would set the FCA penalty level from within the statutorily prescribed range and multiply that dollar amount by the number of violations. Cook County, Ill. v. United States ex rel. Chandler, 538 U.S. 119, 132 (2003) (stating that if the jury finds FCA liability, "the court alone sets any separate penalty")); see, e.g., United States ex rel. Miller v. Bill Harbert Int'l Construct., Inc. ("Miller I"), 501 F. Supp. 2d 51, 58 (D.D.C. 2007) (calculating FCA penalties by multiplying the number of penalties identified by the jury by the $10,000 penalty level set by the court). There would be no need for either the jury or the Court to resolve factual questions regarding Honeywell's degree of proportionate fault as compared to other parties who settled previously. The *pro tanto* methodology therefore would significantly narrow the issues and streamline subsequent proceedings in this case.

### B. There is Substantial Ground for Difference of Opinion

Honeywell argues that the second requirement of Section 1292(b) is satisfied because "[n]either the Supreme Court nor the D.C. Circuit has opined as to whether the *pro tanto* or proportionate share approach applies to FCA cases involving multiple joint tortfeasors." Def. Mem. at 9. In addition, Honeywell maintains that "[t]he only other case in this District to consider the issue," Judge Lamberth's decision in Miller v. Holzmann ("Miller II"), 563 F. Supp. 2d 54 (D.D.C. 2008), "applied the *pro tanto* approach." Def. Mem. at 9. Honeywell reasons that in parting ways with Miller II, this Court created an "intra-circuit split," and that

12

certifying interlocutory appeal "will allow the D.C. Circuit an opportunity to weigh in on a question of first impression for the Circuit." Id. at 9-10. The Court agrees.

The only argument the United States makes in response is that "this Court has already analyzed the legal arguments advanced by Honeywell and reached the right result" in determining that the proportionate share approach should apply. Gov't Opp. at 19. The United States asks the Court to conclude that because the Supreme Court in McDermott, Inc. v. AmClyde, 511 U.S. 202 (1994), found the proportionate share approach superior to the *pro tanto* approach, and because McDermott is not limited to the admiralty context as Honeywell suggests, there can be no substantial ground for difference of opinion. Id. at 20-21, 24. This argument, however, merely reiterates this Court's analysis and its reliance on McDermott. While the Court continues to believe that it reached the correct conclusion, the United States' response does not grapple with the fact that there is an intra-circuit split on an important question of law.

This Court embraced the proportionate share approach as "superior," McDermott, Inc. v. AmClyde, 511 U.S. at 217, but the fact remains that "there is no decision from the D.C. Circuit endorsing either the *pro tanto* or the proportionate share approach in FCA cases." Honeywell IV, 502 F. Supp. 3d at 481. In his post-McDermott decision in Miller II, Judge Lamberth applied the *pro tanto* rule in an FCA case, reasoning that it "'remains a viable alternative' in non-admiralty cases." Id. (quoting Miller II, 563 F. Supp. 2d at 144 n.143). In addition, some district courts outside the D.C. Circuit have applied a *pro tanto* methodology in FCA cases. See Def. Mem. at 10 (citing U.S. ex rel. Bunk v. Birkart Globistics GmbH & Co., Civil Action No. 02-1168, 2011 WL 5005313, at *16 (E.D. Va. Oct. 19, 2011); and United States

13

v. Zan Mach. Co., 803 F. Supp. 620, 624 (E.D.N.Y. 1992)).[3] In other words, there is no controlling precedent on this precise question of law, and there are conflicting decisions by district court judges, including within this district.

The Court also agrees that the measure of damages offsets in an FCA case is "truly [an issue] on which there is a substantial ground for dispute" and that "the arguments in support of" applying the *pro tanto* approach "are not insubstantial." APCC Servs., Inc. v. Sprint Commc'ns Co., L.P., 297 F. Supp. 2d at 98. While the Court has concluded that the proportionate share approach would, on balance, produce a more equitable result, it acknowledges that concerns related to overcompensating the United States could weigh in favor of the *pro tanto* approach. See Honeywell IV, 502 F. Supp. 3d at 483-85. Similarly, although the Supreme Court in McDermott deemed the proportionate share approach "superior," it observed that "the arguments for the two approaches are closely matched." McDermott, Inc. v. AmClyde, 511 U.S. at 217. The justifications for applying the *pro tanto* methodology therefore cannot be wholly "without merit." Nat'l Veterans Legal Servs. Program v. United States, 321 F. Supp. 3d at 155.

The United States maintains that Honeywell has failed to account for the considerations underlying the Court's determination in its opinion on summary judgment that neither judicial economy nor promotion of settlement clearly favor the *pro tanto* methodology. Gov't Opp. at 18-19 (quoting Honeywell IV, 502 F. Supp. 3d, at 486). Yet this is an argument

---

[3] This Court has explained previously that Bunk is distinguishable and not instructive in determining which methodology should apply in this case, because the court in Bunk reduced a group of defendants' share of damages based on a credit for that group's own payments, not for payments made by others. Honeywell IV, 502 F. Supp. 3d at 482. This case nonetheless arguably shows a degree of variation among courts regarding the methodology for calculating damages offsets in an FCA case.

14

for why this Court decided the issue correctly, not an argument against certification. In evaluating the second prong of Section 1292(b), a court "must analyze the strength of the arguments in <u>opposition</u> to the challenged ruling to decide whether the issue is truly one on which there is a substantial ground for dispute." <u>APCC Servs., Inc. v. Sprint Commc'ns Co., L.P.</u>, 297 F. Supp. 2d at 98 (emphasis added). To successfully argue that there is no substantial ground for dispute, the United States would need to show that the arguments that favor the *pro tanto* methodology lack strength. It has not done so.

The Court remains unpersuaded by the argument Honeywell advances for applying the *pro tanto* approach; it "has not faltered in its abiding belief" that the proportionate share approach is most suitable in an FCA case. <u>Gov't of Guam v. United States</u>, 2019 WL 1003606, at *5. Nonetheless, "given [Judge Lamberth's] opposing view" in <u>Miller II</u>, as well as the considerations discussed above, "there unquestionably exists substantial ground for different interpretations." <u>Id</u>. Reasonable jurists can, and do, disagree.

*C. Immediate Appeal May Materially Advance the Ultimate Termination of the Litigation*

Honeywell argues that a D.C. Circuit ruling requiring application of the *pro tanto* methodology would eliminate "the need to litigate comparative fault," and the "complex pre-trial proceedings aimed at establishing how the proportionate share approach will be applied and what evidence can be admitted to establish proportionate fault." Def. Mem. at 11. Honeywell elaborates that "reversal would obviate the need to delve into certain aspects of DOJ's monetary harm at trial, including evidence related to DOJ's vest expenditures and the value received by DOJ from Z Shield containing vests," and would "streamline the testimony and exhibits at trial." Def. Reply at 8.

The United States responds that even if the D.C. Circuit were to rule that the *pro tanto* method applies, this "would not eliminate a single cause of action or defendant[,] much less end the case." Gov't Opp. at 10. According to the United States, "the federal common law of unjust enrichment cause of action would be unaffected" and "all of the FCA causes of action would remain as to the mandatory penalty per false claim." Id. The United States contends that in litigating these remaining components of the case, "Honeywell will still have every incentive to blame other potential wrongdoers . . . for problems with Honeywell's patented Z Shield ballistic-resistant material." Id. at 10-11. Finally, the United States maintains that "this case is close to trial and therefore in a poor procedural posture for an interlocutory appeal." Id. at 12.

The Court agrees with Honeywell that reversal on appeal would narrow the issues to be resolved at trial. If this case were to proceed under the proportionate share approach, Honeywell would be entitled to "'a credit' for each settling defendant's 'proportionate share of responsibility for the total obligation,' which is based on each defendant's degree of fault." Honeywell IV, 502 F. Supp. 3d at 480 (quoting McDermott, Inc. v. AmClyde, 511 U.S. at 210). Before proportionate share offsets could be calculated, therefore, the jury would need to determine "Honeywell's proportionate share of fault as compared to prior settling defendants." Def. Suppl. Br. SJ at 6; see also Gov't Suppl. Br. SJ at 4 ("That credit [that Honeywell would receive under the proportionate share approach] is determined by the percentage of fault attributed to the settling defendants."). In other words, at trial, the jury would need to consider and reach a conclusion on the extent to which the United States' alleged overpayment for Z Shield-containing vests resulted from Honeywell's alleged statements and omissions, versus those of other settling parties. See Def. Mem. at 2.

If the D.C. Circuit reverses and directs this Court to apply the *pro tanto* methodology, by contrast, "there will be no need to determine" Honeywell's share of comparative fault. Nat'l Veterans Legal Servs. Program v. United States, 321 F. Supp. 3d at 154. The Court has already found that under the *pro tanto* approach, the United States' damages amount to $34,922,273, while the other settling defendants have already compensated the United States $36,042,241 for common damages. See Honeywell IV, 502 F. Supp. 3d at 479-80. As a result, the United States has received more from other settling defendants than the amount Honeywell would owe under the *pro tanto* approach, and therefore, Honeywell's FCA statutory damages after offsets would reduce to zero. Id. at 480.

If Honeywell's FCA statutory damages reduce to zero, the parties would be left to litigate FCA penalties and the United States' common law unjust enrichment claim. See Gov't Opp. at 1, 10; Def. Reply at 8; see also Def. Mem. SJ at 46 n.14. To resolve the unjust enrichment claim, the jury would need to determine the amount, if any, by which Honeywell has been enriched as a result of the United States' indirect payments to Armor Holdings for Z Shield Vests. See Am. Compl. ¶¶ 144-45; Honeywell IV, 502 F. Supp. 3d at 485-87. This inquiry would focus on the transfer of value from the United States to Honeywell, rather than on Honeywell's share of fault.

With respect to FCA penalties, the jury would need to adjudicate whether some number of FCA violations occurred. See United States v. Bornstein, 423 U.S. 303, 313 (1976) (holding that the statutory penalty is multiplied by the number of acts in violation of the FCA); U.S. ex rel. Schwedt v. Planning Research Corp., 59 F.3d 196, 199 (D.C. Cir. 1995) ("Each individual false claim or statement triggers the statute's civil penalty."). The jury's inquiry would be twofold: whether Honeywell caused false claims to be submitted in violation of the

17

FCA, and if so, the number of such false claims. See 31 U.S.C. § 3729(a)(1); U.S. ex rel. Schwedt v. Planning Research Corp., 59 F.3d at 199. Based on these findings, the Court would set the level of FCA penalties from within the statutory range and multiply that dollar figure by the number of false claims. See 31 U.S.C. § 3729(a)(1); Cook County, Ill. v. United States ex rel. Chandler, 538 U.S. at 132 ("[I]f [the jury] finds liability . . . the court alone sets any separate penalty.")); Miller I, 501 F. Supp. 2d at 56 ("The determination of the amount of the statutory civil penalties rests within the discretion of the district court.").

Neither of the issues that would remain for resolution, therefore, requires a determination concerning Honeywell's proportionate fault alongside that of other settling defendants. Even if applying the *pro tanto* methodology "would not eliminate a single cause of action or defendant," Gov't Opp. at 10, it would remove the need to litigate comparative fault and to adjudicate an entire category of damages, and would "significantly alter the issues to be addressed" at trial, Nat'l Veterans Legal Servs. Program v. United States, 321 F. Supp. 3d at 155.

The United States suggests that appeal could "take far more time . . . than simply finishing trial preparation and proceeding to trial." Gov't Opp. at 12. Yet as Honeywell points out, "[t]here is no pre-trial schedule." Def. Reply at 9. While a gradual resumption of jury trials is underway in this district, following the massive disruption caused by the global COVID-19 pandemic, priority is being given to criminal trials and it is uncertain when a trial in this case could in fact proceed. See In re: Fifth Extension of Authorization for Use of Video Teleconferencing and Teleconferencing for Certain Criminal and Juvenile Delinquency Proceedings, Standing Order No. 21-33 (BAH) (June 11, 2021); In re: Limited Resumption of Criminal Jury Trials in Light of Current Circumstances Relating to the COVID-19 Pandemic, Standing Order No. 21-10 (BAH) (Mar. 5, 2021). Indeed, the parties themselves have proposed

18

that a trial in this case would not commence sooner than February 2, 2022.  See Apr. 19, 2021 Joint Status Report at 1.

### D.  Immediate Appeal is Appropriate as a Discretionary Matter

For many of the same reasons discussed in the preceding section, the Court concludes that interlocutory appeal is appropriate as a discretionary matter.  The potential savings in terms of time and judicial and party resources are substantial.  The potential delay is less significant, given the procedural posture of this case and the likely time that must elapse before a trial can commence.  If the D.C. Circuit agrees with this Court that the proportionate share approach applies, Honeywell could owe the United States millions of dollars in FCA statutory damages.  If the D.C. Circuit reverses on this question of law, however, Honeywell's FCA statutory damages obligation would reduce to zero dollars.  Given the extent to which an appellate ruling may alter Honeywell's financial obligation this case, the Court is satisfied that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment."  Citizens for Resp. & Ethics in Wash. v. Am. Action Network, 415 F. Supp. 3d at 144-45 (quoting Coopers & Lybrand v. Livesay, 437 U.S. at 475).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant Honeywell International Inc.'s Motion for Certification Under 28 USC § 1292(b) [Dkt No. 235]. An order consistent with this opinion will issue this same day.

SO ORDERED.

/s/

PAUL L. FRIEDMAN
United States District Judge

DATE: June 18, 2021